UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROGER C. CASSIDY,

                    Petitioner,

v.                                    Case No. 3:05-cv-1316-J-33MCR


WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____


## **ORDER**

## **I. Status**

    Petitioner Roger C. Cassidy, an inmate of the Florida penal system who is represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and an Amended Memorandum of Law and Fact (Doc. #12) pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2002 state court (Seminole County, Florida) judgment of conviction for robbery with a deadly weapon and tampering with evidence on the following grounds: (1) the state court erroneously allowed the jury to determine whether a pocketknife is a deadly weapon when a common

_____

    [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

pocketknife is excluded from the definition of weapon set forth in the Florida Statutes; (2) the state court erred by ordering the use of visible shackles on Petitioner during trial, thereby violating his fundamental rights to a presumption of innocence, to be present at trial, to consult with counsel and to participate in his own defense; trial counsel was ineffective for failure to object to the use of the restraints at trial; (3) the state court erred by denying Petitioner's claim of ineffective assistance of counsel for failing to object that allowing both the robbery victim and another employee witness to sit together and confer in a sheriff's vehicle during a show-up identification was impermissibly suggestive; (4) the state court erred by not finding that Petitioner was denied effective assistance of counsel for failing to properly object to the prosecutor's use of an impermissibly suggestive single mug shot of Petitioner to refresh the victim's recollection when the victim was unable to positively identify Petitioner during trial as the perpetrator of the crime; (5) the state court erred by not finding that Petitioner was denied effective assistance of appellate counsel for failing to raise on direct appeal the unduly prejudicial markings on evidence bags, which were introduced into evidence and permitted to go into the jury room during deliberations; (6) the state court erred by denying Petitioner's motion for judgment of acquittal on the tampering with evidence count when the prosecution failed to prove beyond a reasonable doubt that the alleged evidence that was purportedly tampered with

was cocaine; (7) the state court erred in not finding that Petitioner was denied effective assistance of appellate counsel for failing to raise on direct appeal that Petitioner was subjected to an illegal stop and seizure in violation of his Fourth Amendment right; and (8) the state court erroneously sentenced Petitioner to a mandatory life sentence pursuant to the Prison Releasee Reoffender Act when the prosecution failed to notify the victim of the possible sentence and thereafter failed to determine whether the victim wanted the prosecution to pursue such a sentence, and the sentence violated his right to a trial by jury as set forth in the Sixth Amendment and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

Respondents have responded to the Petition. <u>See</u> Respondents' Response to Petition (Doc. #16) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner, through counsel, has replied. <u>See</u> Petitioner's Reply to Respondents' Response to Petition (Doc. #27) (hereinafter Reply). This case is now ripe for review.

## II. Procedural History

On February 12, 2002, Petitioner Cassidy was charged by an Amended Information in Seminole County, Florida, with one count of robbery with a deadly weapon and one count of tampering with physical evidence. Ex. A at 105, Amended Information. The State

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

filed a Notice of Election to Prosecute as a Prison Releasee Reoffender and a Notice of Intention to Seek Sentencing as a Habitual Felony Offender.  Id. at 36, 37.

On December 6, 2001, Petitioner filed a Motion to Suppress, claiming that there was no reasonable suspicion or probable cause to support the stop of his vehicle and therefore all evidence seized after the traffic stop should be suppressed.  Id. at 45-46. A hearing was conducted on the Motion to Suppress, and the trial judge, on February 1, 2002, denied the Motion to Suppress.  Ex. C at 1-73; Ex. A at 99-100.  The trial judge concluded that there was reasonable suspicion to stop Petitioner's vehicle based upon a "be on the lookout" (BOLO) call issued after he committed the robbery. Ex. A at 99-100.

On March 3-4, 2002, a jury trial was held.  Ex. B, Transcript of the Jury Trial (hereinafter Tr.) at 1-448.  Petitioner was found guilty of robbery with a deadly weapon (count one) and tampering with physical evidence (count two), as charged in the Amended Information.  Ex. A at 166, 167; Tr. at 438.  Petitioner was adjudicated guilty and sentenced to a term of life imprisonment for count one and five years of imprisonment for count two, to run concurrently to count one.  Ex. A at 187-93.

On appeal, Petitioner, through counsel, raised the following claims: (1) the trial court erroneously allowed the jury to determine whether a pocketknife is a deadly weapon when a

pocketknife is not defined as a weapon or used in a manner to produce death or great bodily harm, and (2) the trial court erred by denying Petitioner's motion for judgment of acquittal without more than a suspicion that the substance was cocaine.  Ex. D at 22-39, Corrected Initial Brief of Appellant.  The State filed an Answer Brief.  Id. at 40-52.  On September 5, 2003, the appellate court, in a written opinion, stated in pertinent part:

> Cassidy claims that the pocketknife he carried could not have been a deadly weapon. The jury was instructed that "[a] weapon is a 'deadly weapon' if it is used or threatened to be used in a way likely to produce death or great bodily harm."  Cassidy displayed the open pocketknife to the store clerk and threatened to cut her throat. Compare Durden v. State, 743 So.2d 77 (Fla. 1st DCA 1999) (affirming conviction for robbery with a deadly weapon where the defendant held the open blade of a pocketknife to the victim's throat).  We conclude that there was sufficient evidence to make it a jury question whether the pocketknife wielded by Cassidy was a deadly weapon. See Dale v. State, 703 So.2d 1045, 1047 (Fla. 1997) (whether a particular weapon is in fact deadly is a jury question).

> Cassidy was also convicted of tampering with evidence, and he claims that the court should have granted his motion for judgment of acquittal.  We disagree.  Cassidy was charged in one count with hiding a piece of crack, a bag of marijuana, and a soda can modified so that it could be used as a pipe. A police officer testified that he saw Cassidy put the bag of marijuana under the seat, the soda can between the seats, and what looked like a piece of crack into his mouth. The soda can had what appeared to be crack residue on it and the contents of the bag field tested to be marijuana. Although the object Cassidy put in his mouth was never recovered and the can was

> never tested, there was enough evidence for
> the jury to infer that Cassidy was tampering
> with evidence when he disposed of the crack-
> like object and hid the other two items.

<u>Cassidy v. State</u>, 853 So.2d 594, 594-95 (Fla. 5th DCA 2003); Ex. D
at 53-54.  The mandate was issued on September 24, 2003.  Ex. D at
56.

Petitioner sought review from the Florida Supreme Court, and
the parties filed briefs.  Ex. E at 1-2, 3-18, 19-30.  On January
6, 2004, the Florida Supreme Court declined to accept jurisdiction
and denied the petition for review.  <u>Cassidy v. State</u>, 865 So.2d
479 (Fla. 2004); Ex. E at 31.

On August 5, 2004, Petitioner filed a *pro se* motion for post
conviction relief pursuant to Fla. R. Crim. P. 3.850.  Ex. F at 16-
72.  On August 23, 2004, the court denied the motion as facially
insufficient, stating that Petitioner Cassidy did not swear to the
truth of the facts of his motion as required by Fla. R. Crim. P.
3.850(c), which mandates that a motion under this section be filed
under oath.  <u>Id</u>. at 73-74.  The court noted that Petitioner may
file a properly attested motion within the time period set forth in
the rule.  <u>Id</u>.

On September 17, 2004, Petitioner filed a *pro se* motion for
post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising
the following issues: (1) Petitioner was denied his Sixth Amendment
right to confront the witnesses against him and to participate in
his trial when he was made to appear in and wear leg irons and a

stun belt during his trial; (2) ineffective assistance of trial counsel for failing to object to Petitioner's being required to wear both shackles and a stun belt; (3) ineffective assistance of trial counsel for failing to properly object and/or challenge the State's use of an unduly suggestive single mug shot of Petitioner to refresh the memory of the victim who was unable to positively identify Petitioner during the trial as the perpetrator of the alleged crime; (4) the trial court committed fundamental error by allowing the State to enter into evidence a single mug shot photograph of Petitioner and then use the said photograph to assist the victim in identifying the Petitioner after she had previously been unable to do so during the trial; (5) ineffective assistance of trial counsel for failing to argue at the motion to suppress hearing and during the trial that the show up identification Petitioner was subjected to was unduly suggestive, giving rise to irreparable misidentification and in violation of his right to have counsel present; (6) ineffective assistance of trial counsel for unreasonably omitting evidence which would directly support Petitioner's contention of misidentification; (7) the trial court erred by denying Petitioner's proposed jury instruction, or one factually similar, that a pocketknife is an exception to the Legislature's definition of weapon; without evidence presented by the State to conclude that the instrument in question is in fact deadly, or could be deadly, this should not have been a jury

question; and (8) the State's intent to seek Prison Releasee
Reoffender status on Petitioner should have been made known to the
victim at the first available opportunity prior to trial to
dissolve any misinterpretation of sentencing expectation, and any
mitigating/aggravating factors existing for and against such
enhancement should have been submitted. <u>Id</u>. at 75-122.  The State
was ordered to file a response and did file a response.  <u>Id</u>. at
123; 124-48.  Petitioner filed a Supplemental Motion and raised two
additional claims: (9) Petitioner's conviction was obtained through
the admission and use of evidence which was illegally obtained, and
(10) Petitioner was convicted by a jury which was unduly prejudiced
by brown paper bags labeled "armed robbery" and "robbery with a
knife" which contained evidence and were permitted to be brought
into the jury room while the jury deliberated.  <u>Id</u>. at 149-56.
Petitioner filed a Reply to State's Response to Rule 3.850 Motion.
<u>Id</u>. at 160-71.   On February 25, 2005, the trial court denied
Petitioner's Rule 3.850 motion.  <u>Id</u>. at 172-75.

On appeal, Petitioner filed a *pro se* appellate brief, raising
only five of the ten grounds:  grounds one, two, three, four and
eight.  Ex. F at 205-46.  The State declined to file a response.
<u>Id</u>. at 247-48.  On May 24, 2005, without ordering a response from
the State, the appellate court per curiam affirmed without issuing
a written opinion.  <u>Cassidy v. State</u>, 902 So.2d 814 (Fla. 5th DCA
2005); Ex. F at 247, 249.  Petitioner filed a motion for rehearing,

8

which was denied on June 22, 2005.  Ex. F at 250-52; 254.  The mandate was issued on June 10, 2005.  <u>Id</u>. at 253.

On November 22, 2004, Petitioner filed a Petition Alleging Ineffective Assistance of Appellate Counsel, in which he raised the five claims of ineffectiveness for failure to raise the following issues on direct appeal: (1) the trial court's denial of the motion to suppress and subsequent admission of illegally obtained evidence during the trial; (2) the use of unduly prejudicial markings on the bags containing evidence which was permitted to go into the jury room for deliberations; (3) the trial court's allowing the State to enter into evidence a booking photograph of Petitioner and then use the said photograph to assist the victim in identifying the Petitioner after she had previously been unable to do so during the trial; (4) the trial court's denial of Petitioner's request for a special jury instruction concerning his pocketknife; and (5) Petitioner was sentenced as a Prison Releasee Reoffender without fulfilling the mandatory language of the Act that states that the State must take into consideration if extenuating circumstances exist which would preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided.  Ex. G at 1-27.  On December 17 2004, the appellate court ordered the State to file a response.  <u>Id</u>. at 28. The State filed a Response to Petition.  <u>Id</u>. at 29-43.  Petitioner

filed a Reply.  Id. at 44-51.  On February 3, 2005, the appellate court denied the petition.  Id. at 52.

The Petition is timely filed within the one-year period of limitation.  See 28 U.S.C. § 2244(d); Response at 4.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d);

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> <u>Marquard</u>, 429 F.3d at 1303.  The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.  <u>See</u> <u>Carey v. Musladin</u>,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).  Thus, to the

extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between.'"  <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of <u>Strickland</u>.  We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted).  As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. at 1314 n. 15 (quoting <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." <u>Id</u>. at 1315 n.16.  We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made.  <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Ineffective Assistance of Appellate Counsel

As noted previously, in Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court articulated a two-pronged test for determining whether a defendant was denied constitutionally adequate assistance of counsel.   "The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level."  Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)).

To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687.  "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  Eagle, 279 F.3d at 940 (quoting Strickland, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'"  Id. (quoting Strickland, 466 U.S. at 689).  The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct.  Chateloin v.

15

<u>Singletary</u>, 89 F.3d 749, 753 (11th Cir. 1996); <u>see also</u> <u>Jones v.</u> <u>United States</u>, 224 F.3d 1251, 1257-58 (11th Cir. 2000) (noting that counsel's "failure to divine" a change in unsettled law did not constitute ineffective assistance of appellate counsel) (quoting <u>Sullivan v. Wainwright</u>, 695 F.2d 1306, 1309 (11th Cir. 1983)).

To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988)), <u>cert</u>. <u>denied</u>, 531 U.S. 1131 (2001).  "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." <u>Eagle</u>, 279 F.3d at 943 (citing <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990)).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that the state court erroneously allowed the jury to determine whether a pocketknife is a deadly weapon when a common pocketknife is excluded from the definition of weapon set forth in the Florida Statutes.  Petition at 6.  Specifically, Petitioner contends that, "[p]ursuant to the

16

plain meaning of section 790.001(13), because the evidence was undisputed that the item in this case was a common pocketknife, Petitioner should not have been convicted of anything more than simple robbery (without a weapon)." Amended Memorandum of Law and Fact at 2. As acknowledged by Petitioner, this claim was raised on direct appeal. Petition at 6 n.2. Further, Petitioner sought discretionary review in the Florida Supreme Court, but the court declined to accept jurisdiction. Id. On direct appeal, the appellate court stated in pertinent part:

> Cassidy claims that the pocketknife he carried could not have been a deadly weapon. The jury was instructed that "[a] weapon is a 'deadly weapon' if it is used or threatened to be used in a way likely to produce death or great bodily harm." Cassidy displayed the open pocketknife to the store clerk and threatened to cut her throat. Compare Durden v. State, 743 So.2d 77 (Fla. 1st DCA 1999) (affirming conviction for robbery with a deadly weapon where the defendant held the open blade of a pocketknife to the victim's throat). We conclude that there was sufficient evidence to make it a jury question whether the pocketknife wielded by Cassidy was a deadly weapon. See Dale v. State, 703 So.2d 1045, 1047 (Fla. 1997) (whether a particular weapon is in fact deadly is a jury question).

Cassidy, 853 So.2d at 594.

Accordingly, this claim was rejected on the merits by the state appellate court. Thus, there is a qualifying state court decision. This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the

applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[4]

The facts of this case are that Petitioner Cassidy walked up to the cashier in a Handy Way convenience store in Seminole County, Florida, just a few minutes before 2:00 a.m. on July 12, 2001, and asked the cashier for change for a dollar bill. Tr. at 152-54. As she handed him the change, the cashier told him to have a good night. Id. at 155. While displaying a knife, Petitioner replied, "Well, do you want your throat cut?" Id. Petitioner told her to open the cash register drawer and give him the money. Id. The

---

[4] While Petitioner Cassidy argues that the appellate court's decision was contrary to the May 27, 2003, decision of the United States Supreme Court in Bunkley v. Florida, 538 U.S. 835 (2003), the decision in Bunkley was that the case should be remanded to the Florida Supreme Court to consider "whether, in light of the L.B. decision [(700 So.2d 370 (Fla. 1997)], Bunkley's pocketknife of 2 1/2 to 3 inches fit within § 790.001(13)'s "common pocketknife" exception at the time his conviction became final." The Florida Supreme Court, on remand, held that whether a folding knife with a three-inch blade, carried closed in a burglar's pocket, was a dangerous weapon, as an element of armed burglary, or instead was a common pocketknife, was a question of fact for the jury, under the law in effect when defendant's conviction became final in 1989. Bunkley v. State, 882 So.2d 890 (Fla. 2004), cert. denied, 543 U.S. 1079 (2005). The appellate court's ruling is not contrary to or an unreasonable application of the decision in Bunkley, 538 U.S. 835.

cashier handed Petitioner approximately $61.00.  <u>Id</u>. at 156.
Petitioner Cassidy fled, but was later apprehended.

As previously noted, the appellate court, on direct appeal,
specifically found: "Cassidy displayed the open pocketknife to the
store clerk and threatened to cut her throat." <u>Cassidy</u>, 853 So.2d
at 594.  This factual finding was based on the following testimony
at the trial:

> [PROSECUTOR]: When he said "Do you want
> your throat cut" is that when you looked down
> at this hand?
>
> [WITNESS/CASHIER]: Yes.
>
> [PROSECUTOR]: And he had a knife in his
> hand?
>
> [WITNESS/CASHIER]: Yes.
>
> [PROSECUTOR]: Could you see the blade?
>
> [WITNESS/CASHIER]: Yes.
>
> [PROSECUTOR]: And what -- did he have any
> further demands for you?
>
> [WITNESS/CASHIER]: He told me to open the
> drawer and give him all the money.

Tr. at 155.

The jury was instructed that a weapon is a deadly weapon if it
is used or threatened to be used in a way likely to produce death
or great bodily harm.  <u>Id</u>. at 422.  The display of the open
pocketknife to the store clerk, coupled with a threat to cut her
throat, created an issue of fact for the jury to resolve.  Thus,

there was sufficient evidence to make it a jury question whether the pocketknife wielded by Petitioner Cassidy was a deadly weapon.

In L.B. v. State, 700 So.2d 370 (Fla. 1997), the Florida Supreme Court, interpreting the definition of weapon under § 790.001(13), Fla. Stat. (1997), held that a "common pocketknife" was not a weapon for the purposes of a possession offense.  Where the pocketknife is used, as opposed to merely possessed, the pocketknife may be a deadly weapon.  See J.M. v. State, 872 So.2d 985 (Fla. 1st DCA 2004) (holding there was sufficient evidence to support a conviction for intentional assault with a deadly weapon; defendant's display of the knife blade and threat to poke the victim with the pocketknife in the chest made it a deadly weapon); Porter v. State, 798 So.2d 855 (Fla. 5th DCA 2001) (distinguishing per se rule that a common pocketknife is not a deadly weapon as enunciated in L.B., 700 So.2d 370; finding rule does not apply where pocketknife is in open position); Martin v. State, 747 So.2d 474 (Fla. 5th DCA 1999) (stating a pocketknife can qualify as a deadly weapon where the knife was used to assault and injure the victim by slashing his eye); Durden v. State, 743 So.2d 77, 78 (Fla. 1st DCA 1999) (per curiam) (distinguishing the L.B. case; holding offense of carjacking while armed with a deadly weapon may be committed by holding the open blade of a pocketknife to the victim's throat; stating whether an object is a deadly weapon, i.e., whether it is likely to produce death or great bodily harm,

20

is a factual question to be answered by the jury in each case), approved, 777 So.2d 416 (Fla. 2001); Mims v. State, 662 So.2d 962 (Fla. 5th DCA 1995), rev. denied, 673 So.2d 29 (1996).   Here, Petitioner displayed the open pocketknife to the cashier and threatened to cut her throat; she saw the blade.   The issue was properly left for the jury to decide, and there was sufficient evidence presented that the pocketknife was used as a deadly weapon in this case.   Petitioner is not entitled to relief on this ground.

### B. Ground Two

As ground two, Petitioner claims that the state court erred by ordering the use of visible shackles on Petitioner Cassidy during trial, thereby violating his fundamental rights to a presumption of innocence, to be present at trial, to consult with counsel and to participate in his own defense.   Petition at 7; Amended Memorandum of Law and Fact at 3-7.   Additionally, Petitioner contends that counsel was ineffective for failure to object to the use of the restraints at trial.   Petition at 7; Amended Memorandum of Law and Fact at 7.

As acknowledged by Petitioner, he raised this ground in his Rule 3.850 motion (claims one and two).   In denying the Rule 3.850 motion, the court stated in pertinent part:

> The Defendant's first two claims are that his Sixth Amendment right to confront witnesses was hampered because he was brought to trial while wearing leg irons and a stun belt, and counsel was ineffective for failing to object to the use of these measures.   The

Defendant was a known escape risk, as he had fashioned a key at a previous hearing and used it to unlock his shackles.[5]  (See excerpt of trial transcript, attached as Exhibit A). Therefore, the use of restraints was valid. See McCoy v. State, 503 So.2d 371 (Fla. 5th DCA 1987).  Any viewing of these restraints by the jury pool was inadvertent and, quite frankly, questionable. FN 1  Furthermore, the Defendant was not prejudiced by counsel's failure to object.  Counsel had no valid basis for objection because of the Defendant's previous actions, so counsel cannot be deemed to have been ineffective in this instance.

> FN 1.  While the Defendant says that the jurors must have noticed the protruding stun belt and the shackles, the set-up of the Court room makes this assertion questionable at best.  The Defendant was sitting in a chair with a solid, cushioned back.  The stun belt was under his clothes.  Therefore, unless the Defendant turned his chair all the way to the side, the jurors could not have seen the stun belt.  And, as to the shackles, there is a wall between the gallery and the defense table, making it virtually impossible for jurors seated there to see the Defendant's ankles.  Additionally, the defense table has a "modesty panel" that blocked his ankles from the view of the jurors seated in the jury box.  It is unlikely that the jury saw the shackles or stun belt, and if the jurors did see them, such sighting was inadvertent.

_____

[5] See Ex. F at 124, State's Response to Defendant's Motion for Post Conviction Relief (stating "the defendant had been discovered, following a pre-trial motion hearing, to have taken a paperclip from the courtroom and utilized same as a makeshift key to remove his handcuffs prior to transport from the courthouse to jail").

Ex. F at 172.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claims were rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Here, the record demonstrates that the trial judge was aware of Petitioner's previous actions (use of a paperclip as a makeshift key to remove his restraints) as evidenced by the following passage from the trial transcript.

> THE COURT: We can go back on the record. Defense, you are not allowed to give your client a pen, paper clips or anything on the desk. You have to move your briefcase off the desk over to the side.
>
> He's not allowed to have anything. He's already had a paper clip or something that he used on his shackles and take [sic] those off.

> He can't have a paper clip or [a] pen or anything else.
>
> If you hand those to him, you have to take the paperclip off.
>
> [DEFENSE COUNSEL]: I'm not going to hand it to him.

Tr. at 8-9.  Thus, the record does establish a factual basis for the heightened security measures (the dual restraints) to have been employed at the trial.[6]

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.   The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's failure to object to the use of the dual restraints at trial was not deficient

---

[6] In Bello v. State, 547 So.2d 914 (Fla. 1989), the Florida Supreme Court established the requirement that a hearing on the necessity of restraints must precede the decision to shackle if a defendant timely objects and requests an inquiry into the necessity for the restraints.  However, here, counsel did not object and request such an inquiry.

performance since he did not have a valid basis for the objection due to Petitioner Cassidy's previous actions.  The record reflects that Petitioner was a known escape risk, and therefore the trial judge was in the best position to be able to determine that the dual restraints were reasonably necessary.[7]

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

## C. Ground Three

As ground three, Petitioner claims that the state court erred by denying Petitioner's claim of ineffective assistance of counsel

---

[7] The rule of <u>Deck v. Missouri</u>, 544 U.S. 622 (2005) (holding that routine shackling during the penalty phase of a capital trial, without a case-specific finding that security needs justify the shackling, violates a defendant's due process rights unless the State shows beyond a reasonable doubt that shackling did not contribute to the verdict) does not apply retroactively to cases on collateral review.  <u>In re Rutherford</u>, 437 F.3d 1125, 1128 (11th Cir.), <u>cert</u>. <u>denied</u>, 127 S.Ct. 465 (2006); <u>Marquard v. Sec'y for Dept. of Corrs.</u>, 429 F.3d 1278, 1311 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, 547 U.S. 1181 (2006).  The United States Supreme Court in <u>Deck</u> cautioned that this "constitutional requirement, however, is not absolute" but "[i]t permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling." <u>Deck</u>, 544 U.S. at 633.  The determination of whether shackling is warranted "must be case specific" and "should reflect particular concerns, say special security needs or escape risks, related to the defendant or trial." <u>Id</u>.

for failing to object that allowing both the robbery victim and another employee witness to sit together and confer in a sheriff's vehicle during a show-up identification was impermissibly suggestive. Petition at 8; Amended Memorandum of Law and Fact at 7-11. Petitioner acknowledges that he raised this ineffectiveness ground in his Rule 3.850 motion (claim five). However, Respondents contend that Petitioner failed to include this claim in the appeal of the Rule 3.850 and therefore did not sufficiently exhaust the issue. Response at 6. As previously noted, Petitioner filed a *pro se* appellate brief, raising only five of the ten grounds raised in his Rule 3.850 motion. Ex. F at 205-46.

Under Florida law, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no appellate briefs are required. <u>See</u> Fla. R. App. P. 9.141(b)(2)(C). Therefore, "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 Fed. Appx. 982, 984 (11th Cir. 2007) (not selected for publication in the Federal Reporter) (citation omitted). Thus, Petitioner has sufficiently exhausted this ground since he was not required to raise this claim in the appellate brief in order to exhaust the claim in state court. <u>See</u> Reply at 8.

Further, Respondents contend that Petitioner's ground three, couched as a trial court error claim, fails to raise a claim of

federal constitutional dimension.  To the extent that Petitioner's claim pertains to alleged errors in the state post-conviction proceedings, such alleged defects do not state a basis for federal habeas relief.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[8]  <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g denied</u>, 501 U.S. 1277 (1991).

The Eleventh Circuit has noted:

> In <u>Spradley v. Dugger</u>, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief.  825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); <u>see also</u> <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); <u>Franzen v. Brinkman</u>, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings").  Therefore, while habeas relief

---

[8] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

> is available to address defects in a criminal
> defendant's conviction and sentence, an
> alleged defect in a collateral proceeding does
> not state a basis for habeas relief. <u>See</u>
> <u>Spradley</u>, 825 F.2d at 1568.

<u>Quince v. Crosby</u>, 360 F.3d 1259, 1261-62 (11th Cir.), <u>cert</u>. <u>denied</u>,

543 U.S. 960 (2004). Thus, Petitioner is not entitled to relief on

the basis of this claim to the extent that Petitioner is raising a

trial court error claim (that the state post-conviction court erred

by denying Petitioner's claim of ineffective assistance of

counsel).[9]

In denying the Rule 3.850 motion, the court adjudicated the

claim on the merits, stating in pertinent part:

> Next, the Defendant claims that counsel
> was ineffective for failing to move to
> suppress the show-up identification made
> shortly after the crime. The circumstances of
> the show-up identification were reliable.
> (See excerpts of trial transcripts, attached
> as Exhibits C and D).[10] Therefore, the show-
> up was valid. <u>See Walker v. State</u>, 776 So.2d
> 943 (Fla. 4th DCA 2000).[11] Suppression would
> not have been granted, so the Defendant has

---

[9] <u>See</u> Reply at 8-9.

[10] <u>See</u> Tr. at 161-65, 192-95.

[11] In <u>Walker v. State</u>, 776 So.2d 943 (Fla. 4th DCA 2000), the
court held that the pre-trial identification of the defendant was
not unduly suggestive. The court relied upon <u>Neil v. Biggers</u>, 409
U.S. 188, 199-200 (1972), which stated that the following factors
should be considered in evaluating the likelihood of irreparable
misidentification: (a) the witness' opportunity to view the suspect
at the time of the crime; (b) the witness' degree of attention; (c)
the accuracy of the witness' prior description of the suspect; (d)
the level of certainty demonstrated by the witness at the
confrontation; and (e) the length of time between the crime and the
confrontation. <u>Walker</u>, 776 So.2d at 945.

> not shown that he has been prejudiced.  Post-
> conviction relief for failure to file the
> motion should be denied.

Ex. F at 173.

Accordingly, this claim was rejected on the merits by the state trial court.  Thus, there is a qualifying state court decision.  This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, this claim is without merit.  After the robbery (July 12, 2001, just a few minutes before 2:00 a.m.), Ms. Christina West (the cashier) described the robber as follows:  a white male (five feet, six inches or five feet, seven inches) with blond hair, a surfer's hair cut and a small amount of facial hair, between the ages of twenty-one (21) and twenty-five (25) and wearing a light-colored (tan or yellow) button-down shirt with tan shorts.  Ex. A at 2, 6, Arrest Report; Ex. A at 14, Sworn Written Statement by Ms. West.  Deputy Love transported Ms. West and Mr. Rhein (a co-worker)

to the scene of the traffic stop for an identification, and they positively identified without hesitation the vehicle and the suspect as the white male who had robbed the store.  _Id_. at 2, 6-7, 14, 15, 17.[12]

At the trial, Ms. West (the cashier) testified that, on July 12, 2001, just a few minutes before 2:00 a.m., Petitioner asked her for change for a dollar bill.  Tr. at 152-54.  As she handed him the change, she told him to have a good night.  _Id_. at 155.  While displaying a knife, Petitioner replied, "Well, do you want your throat cut?"  _Id_.  Petitioner told her to open the cash register drawer and give him the money.  _Id_.  Over the telephone, she gave the police a description of the robber and then confirmed her description of the robber when they came to the store.  _Id_. at 161. She testified that the robbery was a white male, between the ages of twenty-one (21) and twenty-five (25), with blonde hair, wearing a light yellowish tan button-down dress shirt.  _Id_. at 161-62, 171. She also gave a description of the vehicle that he was driving since she had gone to the store window to view the back of the vehicle as it was leaving the parking lot; the parking lot was

_____

[12] Ms. West stated that, when she saw his face and hair, she "knew it was him." Ex. A at 14, Sworn Written Statement Form. Mr. Rhein further noted: "As soon as I saw the suspect and his car I knew beyond a shadow of a doubt that he was the man that robbed my store." _Id_. at 15, Sworn Written Statement Form. Mr. Rhein stated that he and Ms. West were transported to the traffic stop within twenty to thirty minutes of reporting the robbery. _Id_. The record reflects that the traffic stop was at approximately 2:30 a.m. _Id_. at 5, 18, 19.

"very lit up."   <u>Id</u>. at 158-60, 162, 174.   When the police
transported her to the traffic stop location to identify the
suspect and his car, she immediately recognized the car since it
was old and yellow, "a very odd color that you usually don't see."
<u>Id</u>.  It was not the type of car that she had frequently seen around
town.  <u>Id</u>.  She described the show-up procedure:

> They told us to wait, then they brought
> him, took him outside the police car and stood
> him there.   As soon as we saw him, we
> identified him.   Then they put him back.

<u>Id</u>. at 164.  She was positive that he was the robber.  <u>Id</u>. at 164,
178.  She confirmed at the trial that she saw him in the store well
enough that she could make a positive identification at the show-up
shortly after the robbery.  <u>Id</u>. at 179.

Mr. Rhein also testified at the trial.  Mr. Rhein, just before
2:00 a.m. on July 12, 2001, was hosing off the parking lot at the
Handy Way store.  <u>Id</u>. at 187.  Mr. Rhein observed Petitioner in the
parking lot of the store from approximately five or six feet away.
<u>Id</u>. at 189.   Initially, Mr. Rhein saw Petitioner open his hood,
check the oil and water and open his trunk.  <u>Id</u>. at 188-89.   It
appeared that "he was messing with the car."  <u>Id</u>.  He saw him go
into the store.  <u>Id</u>. at 189.  He saw Petitioner come around the
corner after the robbery and saw him get into the car.  <u>Id</u>. at 190.
When the police arrived, he gave them a description of Petitioner
and the vehicle.  <u>Id</u>. at 192.  He told them the car was an older
model (1970's) yellow Gremlin.  <u>Id</u>. at 192-93.  At the show-up

31

identification (within less than one hour after the robbery), he positively identified the vehicle, which was actually a yellow 1976 Chevette. Id. at 194, 197, 206; Ex. A at 6. He also positively identified Petitioner as the robber of the store. Id. at 194-95. At the show-up identification, Ms. West made her identification first, and then Mr. Rhein made his identification; Mr. Rhein recognized the robber independently of Ms. West's identification. Id. at 213. Since Mr. Rhein had a good opportunity to observe Petitioner in the store's parking lot both before and after the robbery, there was no doubt in his mind that he had identified the same person who had committed the robbery. Id.

Clearly, counsel was not ineffective for failing to challenge the identification because there is no reasonable probability of an irreparable misidentification in this case. As reflected by the record, defense counsel thoroughly cross-examined both Ms. West and Mr. Rhein with respect to the show-up identifications. The factors to be considered in evaluating the likelihood of irreparable misidentification include: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Here, the show-up identifications were made by two eyewitnesses at

the scene of Petitioner's apprehension.  Both witnesses had good opportunities to view the Petitioner at a close distance at the time of the robbery.[13]  Their descriptions to the police of both the getaway car and the Petitioner's characteristics highlight their degree of attention to detail and the accuracy of their descriptions.  The identifications of Petitioner were made just shortly after the robbery (within an hour), and both Ms. West and Mr. Rhein made positive out of court identifications as a result of the show-up.

In sum, the evidence of Petitioner's guilt was overwhelming.  Even assuming *arguendo* that counsel's performance was deficient, there is no reasonable probability that the outcome of the case would have been different if counsel had taken the actions Petitioner alleges he should have taken.

### D. Ground Four

As ground four, Petitioner claims the state court erred by not finding that Petitioner was denied effective assistance of counsel for failing to properly object to the prosecutor's use of an

---

[13] Ms. West, as the cashier, interacted with Petitioner while he stood at the register for monetary change.  Tr. at 154-57.  She confirmed at the trial that she saw him well enough that she could make a positive identification at the show-up shortly after the robbery.  Id. at 179.  Additionally, Mr. Rhein observed Petitioner in the store's parking lot from approximately five or six feet away.  Id. at 189.  Since Mr. Rhein had a good opportunity to observe Petitioner in the store's parking lot both before and after the robbery, there was no doubt in his mind that he had identified the same person who had committed the robbery.  Id.

impermissibly suggestive single mug shot of Petitioner to refresh the victim's recollection when the victim was unable to positively identify Petitioner during trial as the perpetrator of the crime. Petition at 9-10; Amended Memorandum of Law and Fact at 11-12. Petitioner acknowledges that he raised this ineffectiveness ground in his Rule 3.850 motion (claim three).

Respondents contend that Petitioner's ground four, couched as a trial court error claim, fails to raise a claim of federal constitutional dimension.   To the extent that Petitioner's claim pertains to alleged errors in the state post-conviction proceedings, such alleged defects do not state a basis for federal habeas relief.   <u>See</u> Section VII., C. Ground Three (stating the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States).   Thus, Petitioner is not entitled to relief on the basis of this claim to the extent that Petitioner is raising a trial court error claim (that the state post-conviction court erred by denying Petitioner's claim of ineffective assistance of counsel).

In denying the Rule 3.850 motion with respect to this ineffectiveness claim, the court adjudicated the claim on the merits, stating in pertinent part:

> Defendant states that counsel was ineffective
> for failing to object to the use of a mug shot
> to refresh the victim's recollection of the
> Defendant's identity . . . .   Counsel objected

> to the use of these photos,[14] but the
> objections were denied. (See excerpt of trial
> transcript, attached as Exhibit B).[15]   The
> Defendant does not state what he believes the
> "proper" objection would have been, presumably
> because there was not [a] legitimate basis for
> objection. . . .

Ex. F at 173.[16]

     As previously noted, the appellate court per curiam affirmed.
Accordingly, this ground was rejected on the merits by the state
trial and appellate courts.  Thus, there are qualifying state court
decisions.   This  ground  should  be  addressed  applying  the
deferential standard for federal court review of state court
adjudications, as required by AEDPA.  Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established  federal  law,  did  not  involve  an  unreasonable
application of clearly established federal law, and were not based

---

     [14] See Ex. A at 118, Exhibit and Identification List, State's
Exhibit D, Photographs of Defendant (front/side).  At the trial,
State's Exhibit D was admitted into evidence as State's Exhibit 3.
Tr. at 164, 170, 307.

     [15] See Tr. at 164-65.

     [16] Within the same paragraph, the court addressed claim three
(ineffectiveness of counsel) as well as claim four (the trial
court's fundamental error).  Ex. F at 173.  The court concluded
that any alleged errors by the court overruling counsel's
objections or admitting the photographs into evidence should have
been raised on direct appeal.  Id.

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ineffectiveness ground to be without merit. <u>See</u> Response at 14-15. At the trial, Ms. West, the victim, stated that she had provided law enforcement with the robber's description immediately after the commission of the robbery. Tr. at 161. Further, the evidence at trial established that, between the July 12, 2001, robbery and the time of the trial in March, 2002 (eight months later), Petitioner's appearance changed significantly. <u>Id</u>. at 165, 196, 307. On July 12, 2001, Ms. West was transported by Deputy Love to the location of Petitioner's capture shortly after the robbery where she was able to make a positive identification of Petitioner as the robber of the store. Ex. A at 57-58; Tr. at 164, 178. Since Petitioner's appearance changed significantly from the night of the robbery when the booking photographs were taken (which was marked as State's Exhibit D and later admitted into evidence as State's Exhibit 3), she was unable to positively testify that Petitioner, as he appeared in court in March, 2002, was the robber of July 12, 2001. Tr. at 164. Ms. West testified at trial and was subject to a thorough cross-examination about her earlier identification at the show-up on the same night as the robbery.[17] The booking photographs

---

[17] Certainly, an identification made shortly after the crime is more reliable in most situations than identifications made at a later time. <u>See</u> Fla. Stat. 90.801(2)(c).

taken the night of his arrest in this case were clearly relevant evidence to explain why the victim may not be positive about her identification at trial given the significant change in his appearance. At noted in the record, defense counsel objected twice to the admission of the State's exhibit on grounds of insufficient foundation and speculation; however, the objections were overruled by the trial judge. Id. at 164-65. Ms. West also explained that his appearance had changed significantly since her initial identification of him at the show-up. Id. at 165.

Petitioner now submits that counsel should have objected to the State's exhibit as impermissibly suggestive. Amended Memorandum of Law and Fact at 11. However, as the record reflects, Ms. West had originally identified Petitioner Cassidy at a show-up, and thus the State's exhibit was to refresh her recollection. Defense counsel's failure to object to the State's exhibit as impermissibly suggestive was not deficient performance. And, even assuming *arguendo* that counsel's performance was deficient, there is no reasonable probability that the outcome of the case would have been different if counsel had taken the actions Petitioner alleges he should have taken. The evidence of Petitioner's guilt was overwhelming, and both eyewitnesses had positively identified Petitioner at the show-up. Additionally, Mr. Rhein made a positive identification of Petitioner at the trial. Tr. at 195-96.

## E. Ground Five

As ground five, Petitioner claims the state court erred by not finding that Petitioner was denied effective assistance of appellate counsel for failing to raise on direct appeal the unduly prejudicial markings on evidence bags, which were introduced into evidence and permitted to go into the jury room during deliberations.  Petition at 10-11; Amended Memorandum of Law and Fact at 12-14.  Petitioner acknowledges that he raised this ineffectiveness ground in his state habeas petition (claim two). Petition at 10 n.8.

Respondents contend that Petitioner's ground five, couched as a state court error claim, fails to raise a claim of federal constitutional dimension.  To the extent that Petitioner's claim pertains to alleged errors in the state post-conviction proceedings, such alleged defects do not state a basis for federal habeas relief.  See Section VII., C. Ground Three (stating the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States).  Thus, Petitioner is not entitled to relief on the basis of this claim to the extent that Petitioner is raising a state court error claim (that the state court erred by denying

Petitioner's claim of ineffective assistance of appellate counsel).[18]

As previously noted, Petitioner raised this ineffectiveness claim in his state petition. Ex. G at 1-27. The State argued that the claim was without merit, and the appellate court summarily denied the petition without issuing a written opinion. Id. at 37-38, 52.

Accordingly, this ineffectiveness claim was rejected on the merits by the state appellate court. Thus, there is a qualifying state court decision.[19] This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

_____

[18] See Reply at 9.

[19] For the state court's resolution of a claim to be a merits adjudication, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d at 1255.

This Court also finds this ineffectiveness ground to be without merit. <u>See</u> Response at 15-18; Ex. G at 37-38. Petitioner's appellate counsel cannot be faulted for failing to raise this ground on direct appeal since the record reflects that the trial court did not err. Even assuming *arguendo* deficient performance by appellate counsel, Petitioner has not shown prejudice. As previously noted, Petitioner presented this ineffectiveness claim (appellate counsel's failure to raise the trial court's error on direct appeal) to the appellate court (Ex. G at 1-27), and the appellate court denied the petition. <u>Id</u>. at 52. Petitioner was not prejudiced when this ground was not included on direct appeal since the omitted claim would not have had a reasonable probability of success before the appellate court. This ineffectiveness of appellate counsel claim is without merit.

### F. Ground Six

As ground six, Petitioner claims the state court erred by denying Petitioner's motion for judgment of acquittal on the tampering with evidence count when the prosecution failed to prove beyond a reasonable doubt that the alleged evidence that was purportedly tampered with was cocaine. Petition at 11-12; Amended Memorandum of Law and Fact at 14-15. As acknowledged by Petitioner, this claim was raised on direct appeal. Petition at 11 n.9. Further, Petitioner sought discretionary review in the Florida Supreme Court, but the court declined to accept

jurisdiction.  <u>Id</u>.  On direct appeal, the appellate court stated in pertinent part:

> Cassidy was also convicted of tampering with evidence, and he claims that the court should have granted his motion for judgment of acquittal.  We disagree.  Cassidy was charged in one count with hiding a piece of crack, a bag of marijuana, and a soda can modified so that it could be used as a pipe. A police officer testified that he saw Cassidy put the bag of marijuana under the seat, the soda can between the seats, and what looked like a piece of crack into his mouth. The soda can had what appeared to be crack residue on it and the contents of the bag field tested to be marijuana. Although the object Cassidy put in his mouth was never recovered and the can was never tested, there was enough evidence for the jury to infer that Cassidy was tampering with evidence when he disposed of the crack-like object and hid the other two items.

<u>Cassidy</u>, 853 So.2d at 594-95; Ex. D at 54.

To the extent that the claim was raised in the federal constitutional sense (<u>see</u> Response at 10), and to the extent that the federal constitutional claim was addressed on the merits, the state court's rejection of this ground is entitled to deference as required pursuant to AEDPA.  Upon review, it is clear that the state court's adjudication of the claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law.  <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  Additionally, it did not result in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief.

The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Thompson, 118 F.3d at 1448.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed the offense of tampering with physical evidence. Consequently, the trial court did not err in denying the motion for judgment of acquittal, and the appellate court's affirmance was not contrary to or an unreasonable application of federal law. The testimony provided sufficient evidence for a conviction for tampering with physical evidence. See Jackson v. Virginia, 443 U.S. 307. Petitioner is not entitled to relief. See

Response at 18-20; Ex. A at 112-13, 116; Tr. at 356, 368, 422-23; Ex. D at 40, Answer Brief on Direct Appeal.

## G. Ground Seven

As ground seven, Petitioner claims the state court erred in not finding that Petitioner was denied effective assistance of appellate counsel for failing to raise on direct appeal that Petitioner was subjected to an illegal stop and seizure in violation of his Fourth Amendment right. Petition at 12-13; Amended Memorandum of Law and Fact at 15-18. Petitioner acknowledges that he raised this ineffectiveness ground in his state habeas petition (claim two). Petition at 12 n.10.

Respondents contend that Petitioner's ground seven, couched as a state court error claim, fails to raise a claim of federal constitutional dimension. To the extent that Petitioner's claim pertains to alleged errors in the state post-conviction proceedings, such alleged defects do not state a basis for federal habeas relief. See Section VII., C. Ground Three. Thus, Petitioner is not entitled to relief on the basis of this claim to the extent that Petitioner is raising a state court error claim (that the state court erred by denying Petitioner's claim of ineffective assistance of appellate counsel).[20]

As previously noted, Petitioner raised this ineffectiveness claim in his state petition. Ex. G at 1-27. The State argued that

---

[20] See Reply at 11.

the claim was without merit, and the appellate court summarily denied the petition without issuing a written opinion.  <u>Id</u>. at 36-37, 52.

Accordingly, this ineffectiveness claim was rejected on the merits by the state appellate court.  Thus, there is a qualifying state court decision.[21]  This claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ineffectiveness ground to be without merit.  <u>See</u> Response at 15-18; Ex. G at 36-37. Petitioner's appellate counsel cannot be faulted for failing to raise this ground on direct appeal since the record reflects that the trial court did not err.

---

[21] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d at 1255.

After a hearing on the Motion to Suppress Evidence (Ex. A at 45-46; Ex. C at 1-72, Transcript of the Suppression Hearing), the trial judge denied the motion, stating in pertinent part:

> The Defendant is charged with robbery with a weapon for allegedly stealing $61.00 from a convenience store shortly after 2:00 a.m. on July 17 [22], 2001. The Defendant was stopped based upon a "be on the lookout" (BOLO) call. Officers were looking for a "faded yellow Gremlin driven by a white male with a surfer's haircut." Deputy Wilkinson of the Seminole County Sheriff's Office saw a faded yellow Chevette, which upon further investigation, was driven by a young blond male with a surfer's haircut. Deputy Wilkinson, along with three officers from the Sanford Police Department conducted a felony stop on the vehicle. The Defendant was non-complaint [sic] with Deputy Wilkinson's commands during the stop. Officer McMurrer of the Sanford Police Department observed the Defendant put suspected crack cocaine in his mouth and suspected marijuana under the seat. The Defendant was arrested. A search revealed a pocketknife, which was the weapon used in the robbery. The store employees also identified the Defendant as the perpetrator of the robbery. The Defendant claims that there was no reasonable suspicion or probable cause to support the traffic stop which led to this arrest. Therefore, he claims all evidence seized after the traffic stop should be suppressed.
>
> The Court must determine whether the information disclosed by the BOLO supported the felony stop. "Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the

_____

[22] At the suppression hearing, the officers verified the date as July 12, 2001. Ex. C at 8, 22.

description of the vehicle and its occupants
and (4) the source of the BOLO information."
Hunter v. State, 660 So.2d 244, 248 (Fla.
1995).  Considering the evidence and testimony
presented at the hearing, this Court finds
that these factors support the denial of the
Defendant's motion.

[A]t the hearing, the testimony showed
that the time between the robbery and the
felony stop was less than one half-hour.  The
stop occurred no more than ten miles from the
convenience store.  A likely route of flight
would have led the Defendant to the area of
State Road 46 and Interstate 4, where the stop
occurred.  The description of the car, while
not exact, was sufficient to give Deputy
Wilkinson reasonable suspicion that this
Defendant was the suspect in the armed
robbery.  The State introduced evidence at the
hearing that showed that a Gremlin is very
similar in appearance to a Chevette.  The
testimony also indicated that neither car is
[th]at common in this area of Seminole County,
especially in or around Sanford after 2:00
a.m.  When this information was coupled with
the driver's description matching that of the
suspect, it gave ample reasonable suspicion to
stop the vehicle.  Finally, the information
was given by the clerk of the convenience
store, who qualifies as a citizen-informant,
and whose information is at the highest end of
the tip-reliability scale.  See State v.
Evans, 692 So.2d 216 (Fla. 4th DCA 1997).
Therefore, since Deputy Wilkinson had
reasonable suspicion to stop the faded yellow
Chevette and arrest the Defendant, the motion
should be denied.

Ex. A at 99-100, Order Denying Defendant's Motion to Suppress.  The

trial judge's factual findings are supported by competent,

substantial evidence.  See Ex. C at 67-72.

The evidence at the suppression hearing demonstrated that the

officer did not stop the vehicle until relaying (via the

dispatcher) his visual description of the driver to the deputy on the scene with the victims and thus confirming that the driver matched the description of the robber. Id. at 10-11, 27-28. After the valid stop, probable cause was developed to believe that the driver was tampering with evidence, which caused the officers to remove him from his vehicle. The officer had a reasonable suspicion sufficient to justify the stop of the Petitioner's vehicle.

Even assuming _arguendo_ deficient performance by appellate counsel, Petitioner has not shown prejudice. As previously noted, Petitioner presented this ineffectiveness claim (appellate counsel's failure to raise the trial court's error on direct appeal) to the appellate court (Ex. G at 1-27), and the appellate court denied the petition. Id. at 52. Petitioner was not prejudiced when this ground was not included on direct appeal since the omitted claim would not have had a reasonable probability of success before the appellate court. This ineffectiveness of appellate counsel claim is without merit.

### H. Ground Eight

As ground eight, Petitioner claims that (a) the state court erroneously sentenced Petitioner to a mandatory life sentence pursuant to the Prison Releasee Reoffender Act when the prosecution failed to notify the victim of the possible sentence and thereafter failed to determine whether the victim wanted the prosecution to

pursue such a sentence, and (b) the sentence violated his right to a trial by jury, as set forth in the Sixth Amendment and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).   Petition at 13-14; Amended Memorandum of Law and Fact at 18-20.   Petitioner claims that he raised this claim in his Rule 3.850 motion (claim eight).   Petition at 13 n.11.

First, with respect to ground 8(a), Respondents contend that Petitioner raises nothing more than a state sentencing issue. Response at 9.   Petitioner raised this claim in his Rule 3.850 motion and on appeal of the denial of the Rule 3.850 motion solely as a violation of state law.   Petitioner did not present this issue in state court in terms of a federal constitutional violation; however, he presents the same claim here that he raised in his Rule 3.850 motion and on appeal of the denial of the Rule 3.850 motion. Thus, this Court is satisfied that the claim is exhausted, but it presents an issue of state law that is not cognizable on federal habeas review.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.   <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g denied</u>, 501 U.S. 1277 (1991).   "Federal habeas relief is unavailable 'for errors of state law.'"   <u>Jamerson v. Secretary for</u>

<u>Dept. of Corrections</u>, 410 F.3d 682, 688 (11th Cir. 2005) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), <u>cert</u>. <u>denied</u>, 504 U.S. 944 (1992). As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. <u>Bronstein v. Wainwright</u>, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. <u>Mendiola v. Estelle</u>, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

<u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 975, <u>reh'g</u> <u>denied</u>, 507 U.S. 1046 (1993).

In sum, Petitioner's claim under ground 8(a) (the failure to notify the victim of the sentence under Florida law) presents an issue of state law that is not cognizable on federal habeas review. Although Petitioner couched the claim in terms of due process, the claim is centered upon the failure to notify the victim of the sentence in violation of Florida law and an interpretation of legislative intent under Florida law. Thus, he is not entitled to relief on the basis of this claim under ground 8(a).

Even assuming *arguendo* that the state courts construed Petitioner's state law claim as an issue of federal constitutional dimension, the state courts' adjudications of this claim are due deference under AEDPA.   In denying the claim on the merits, the post-conviction court stated:

> The Defendant does not state that the victim disagreed with the application of this provision to the Defendant.   Even if there was some concern by the victim, she does not have "veto power" over the State's decision.   See Turner v. State, 745 So.2d 351 (Fla. 1st DCA 1999).

Ex. F at 174.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts.   Thus, there are qualifying state court decisions.   This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.   Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Respondents contend that ground 8(b) is procedurally barred because Petitioner failed to raise the claim in his Rule 3.850 motion or on appeal of the denial of the Rule 3.850 motion.  This Court agrees.  Blakely, 542 U.S. 296, was decided on June 24, 2004, and therefore Petitioner had the opportunity to raise the Blakely issue, but failed to do so.[23]  See Ex. F at 75-113, 160-71, 205-46.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'q denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

---

[23] In Blakely, 542 U.S. at 301, the United States Supreme Court stated:  "This case requires us to apply the rule we expressed in Apprendi v. New Jersey, 530 U.S. 466 . . . that [o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Thus, as noted by the state post-conviction court, such a claim should have been raised on direct appeal (Ex. F at 174), and therefore Petitioner could have raised such a claim based on Apprendi v. New Jersey, 530 U.S. 466 (2000), on direct appeal.

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992).  A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 963 (1998)).

It would be futile to dismiss this case to give the Petitioner an opportunity to exhaust the unexhausted portion of ground eight in state court because he could have and should have raised the entire claim in his motion for post-conviction relief.  If Petitioner attempted to raise such a claim in another 3.850 motion at this time, such a motion would be subject to dismissal as successive, <u>see</u> Fla. R. Crim. P. 3.850(f), and untimely.  <u>See</u> Fla. R. Crim. P. 3.850(b).  Thus, ground 8(b) has been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." <u>Parker v.</u>

Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, ground 8(b) is procedurally barred.[24]

---

[24] Further, as noted by Respondents (Response at 9), Blakely does not apply retroactively to cases on collateral review. See Jones v. United States, 203 Fed. Appx. 324 (11th Cir. 2006) (not selected for publication in the Federal Reporter) (holding that Blakely did not apply retroactively to cases on collateral review); Varela v. United States, 400 F.3d 864, 867-68 (11th Cir.), cert. denied, 546 U.S. 924 (2005).

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 24th day of June, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 6/20
c:
Counsel of Record